# No. 23-10299

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

---

Adelaide Dixon,

*Plaintiff – Appellant*,

v.

University of Miami,

*Defendant – Appellee*.

Appeal from the United States District Court
for the Southern District of Florida

No. 0:20-cv-60851

---

## REPLY BRIEF OF APPELLANT ADELAIDE DIXON

---

Blake G. Abbott
Poulin | Willey | Anastopoulo, LLC
32 Ann Street
Charleston, SC 29403
P: (843) 614-8888

## APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant, Adelaide Dixon, by and through her undersigned counsel and pursuant to 11th Cir. R. 26.1, hereby submits her Certificate of Interested Persons and Corporate Disclosure Statement.

## CERTIFICATE OF INTERESTED PERSONS

The following is a list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, and corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, affiliates and parent corporations, as well as any publicly held corporation, if any, that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.   Abbott, Blake G. (counsel for Plaintiff-Appellant)

2.   Berman, Steve W. (counsel for Plaintiff-Appellant)

3.   Brunson, Robert (counsel for Defendant-Appellee)

4.   Dixon, Adelaide (Plaintiff-Appellant)

5.   Doolittle, Paul J. (counsel for Plaintiff-Appellant)

6.   Furst, Rachel W. (counsel for Plaintiff-Appellant)

7.   Grossman Roth Yaffa Cohen, PA (counsel for Plaintiff-Appellant)

8.   Grossman, Stuart Z. (counsel for Plaintiff-Appellant)

9.   Hagens Berman Sobol Shapiro LLP (counsel for Plaintiff-Appellant)

i

10.    Isicoff, Eric David (counsel for Defendant-Appellee)

11.    Isicoff, Jordan Daniel (counsel for Defendant-Appellee)

12.    Isicoff Ragatz & Koenigsberg, PA (counsel for Defendant-Appellee)

13.    Kurowski, Daniel (counsel for Plaintiff-Appellant)

14.    Lines, Matthew L. (counsel for Defendant-Appellee)

15.    Mellen, Mary Kathleen McTigh (counsel for Defendant-Appellee)

16.    Nelson Mullins Riley Scarborough, LLP (counsel for Defendant-Appellee)

17.    Poulin, Eric M. (counsel for Plaintiff-Appellant)

18.    Poulin | Willey | Anastopoulo, LLC (counsel for Plaintiff-Appellant)

19.    Ragatz, Teresa (counsel for Defendant-Appellee)

20.    Raymond, Mark Francis (counsel for Defendant-Appellee)

21.    Siehl, Whitney K. (counsel for Plaintiff-Appellant)

22.    University of Miami (Defendant-Appellee)

23.    Willey, Roy T. (counsel for Plaintiff-Appellant)

24.    Yannuzzi, Christopher Michael (counsel for Defendant-Appellee)

# TABLE OF CONTENTS

**APPELLANT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT** .................................................... i

**TABLE OF AUTHORITIES** ................................................................... v

**ARGUMENT** ...............................................................................................1

I.   THE DISTRICT COURT ERRED BY GRANTING MIAMI'S MOTION FOR SUMMARY JUDGMENT ...........................................................................1

   A.  There Is A Genuine Dispute Of Material Fact Regarding Appellant's Breach of Contract Claims. ...............................................................1

   B.  The District Court Erred By Granting Summary Judgment As To Appellant's Unjust Enrichment Claims. ..........................................5

      i.   Whether the FRS precludes Appellant's unjust enrichment claim is a disputed material fact. ........................................................5

      ii.  The Doctrine of Educational Malpractice does not bar Appellant's unjust enrichment claims .....................................................8

II.  THE DOCTRINES OF IMPOSSIBILITY AND ACQUIESCENCE DO NOT SUPPORT AFFIRMING THE DISTRICT COURT'S ORDER ON SUMMARY JUDGMENT ................................................................10

   A.  The Doctrines of Impossibility and of Acquiescence were not considered by the District Court and are not subject to review by this Court. ...................10

   B.  The Doctrine of Impossibility does not bar Appellant's claims ...............12

   C.  The Doctrine of Acquiescence does not bar Appellant's claims ...............16

**CONCLUSION** ...................................................................................18

**CERTIFICATE OF COMPLIANCE** ...................................................................**19**

**CERTIFICATE OF SERVICE** ..........................................................................**19**

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Acosta v. Dist. Bd. Of Trs. of Miami-Dade Comm. Coll*., 905 So. 2d 226 (Fla. 3d DCA 2005) ..........................................................................................17

*Am. Aviation, Inc. v. Aero–Flight Serv., Inc.,* 712 So.2d 809 (Fla. 4th DCA 1998) ..........................................................................................................12

*Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200 (11th Cir. 2008) ................................................................................................11, 16

*Ashraf v. Swire Pacific Holdings, Inc.*, 752 F. Supp. 2d 1266 (S.D. Fla. 2009) ....12

*Baumann v. Savers Federal Sav. & Loans Ass'n*, 934 F.2d. 1506 (11th Cir. 1991) 9, 10, 11

*Cook v. Deltona Corp.*, 753 F. 2d 1552 (11th Cir. 1985)..........................................13

*Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.,* 174 So.2d 614 (Fla. 2d DCA 1965)..............................................................................................12

Dean Witter Reynolds, Inc. v. Fernandez, 741 F.2d 355 (11th Cir. 1984) .............10

*Enid Corp. v. Mills*, 101 So. 2d 906 (Fla. 3d DCA 1958).......................................13

*Figueroa v. Point Park Univ.*, 553 F. Supp. 3d 259 (W.D. Pa. 2021) .....................6

*Fiore v. Univ. of Tampa*, 568 F.Supp.3d 350 (S.D.N.Y. 2021) ...........................1, 6

*Garland v. Western Michigan Univ.*, 2021 WL 305744 (Mich. Ct. Cl. Jan. 06, 2021) .......................................................................................................7

*Goldfein v. Envision Physician Services, LLC*, 2022 WL 3681915 (S.D. Fla. Feb. 3, 2022) ...............................................................................................13

*In re Cinemex USA Real Estate Holdings, Inc.,* 627 B.R. 693 (Bankr. S.D. Fla. 2021) .......................................................................................................13

*In re Daikin Miami Overseas, Inc.*, 868 F.2d 1201 (11th Cir. 1989) ......................11

*In Re Pepperdine Univ. Tuition and Fees COVID-19 Refund Litig.*, 2023 WL 2576766 (C.D. Cal. March 7, 2023) ............................................................4, 6, 8

*In re Univ. of Miami*, 524 F. Supp. 3d 1346 (S.D. Fla. 2021)..................................1

*Jallali v. Nova Se. Univ., Inc*., 992 So. 2d 338 (Fla. 4th DCA 2008) ......................1

*Jones v. Administrators of Tulane Educ. Fund,* 51 F.4th 101 (5th Cir. 2022) ..........6

*Kishinevsky v. Bd. of Trs. of Metro. State Univ. of Denver*, 2020 WL 7087313 (Colo. Dist. Ct. Nov. 23, 2020) ..............................................................................7

*McGuire v. Intelident Sols., LLC*, 2021 WL 3195145 (M.D. Fla. May 12, 2021) ..11

*McMillan v. Shively*, 23 So. 3d 830 (Fla. Dist. Ct. App. 2009).................................2

*Moon v. Wilson*, 130 So. 25 (Fla. 1930)..................................................................13

*Ninivaggi v. Univ. of Delaware*, 555 F. Supp. 3d 44 (D. Del. 2021) ......................14

*Omori v. Brandeis Univ*., 2022 WL 10511039 (D. Mass. Oct. 18, 2022)................6

*Salerno v. Florida So. Coll*., 488 F.Supp.3d 121 (M.D. Fla. Sept. 16, 2020)..........1

## ARGUMENT

## I.    THE DISTRICT COURT ERRED BY GRANTING MIAMI'S MOTION FOR SUMMARY JUDGMENT

### A.    There Is A Genuine Dispute Of Material Fact Regarding Appellant's Breach of Contract Claims.

Under Florida Law, "the terms of the relationship between a student and a university may be found in the university catalogs, student manuals, student handbooks, and other university policies and procedures." *In re Univ. of Miami*, 524 F. Supp. 3d 1346, 1352 (S.D. Fla. 2021); *Jallali v. Nova Se. Univ., Inc*., 992 So. 2d 338, 342 (Fla. 4th DCA 2008) (student's relationship with university is based in contract arising from the university's rules, regulations, regimen and publications at the time of enrollment). "Florida law recognizes that the college/student contract is typically implied in the Colleges publications." *Salerno v. Florida So. Coll*., 488 F.Supp.3d 121, 1218 (M.D. Fla. Sept. 16, 2020). Thus, the terms of the implied contract between students and their university are taken from common documents such as the university's catalogs, student manual, student handbooks, and other university publications as a whole. *See Fiore v. Univ. of Tampa*, 568 F.Supp.3d 350, 369 (S.D.N.Y. 2021) ("[T]aken together, these materials are sufficient to allege an implied contract with the specific term that the classes in which the students enrolled would be held in person."). Nor are the parties limited solely to publication citations as conduct matters under Florida law. *McMillan v. Shively*, 23 So. 3d 830, 831 (Fla.

Dist. Ct. App. 2009)("[A]n implied contract is one in which some or all of the terms are inferred from the conduct of the parties and the circumstances of the case, though not expressed in words. In a contract implied in fact the assent of the parties is derived from other circumstances, including their course of dealing or usage of trade or course of performance.") (citations and quotations omitted).

Despite the plethora of case law recognizing that the terms of the implied contract are expressed through miscellaneous university publications taken together as a whole and the parties' conduct, Miami argues that Appellant "cannot identify any certain and definite contractual provision in the Handbook, FRS or any other publication that requires the University to provide in-person classes or unlimited access to its campus at all times and under all circumstances." Appellee Br., at 31. However, Miami's contention is neither accurate nor correct under Florida Law. [1]

---

[1] The district court relied upon New York law to grant Miami's motion for summary judgment. However, the Second Circuit has since reversed the strict standard relied upon by the district court. In *Rynasko v. New York Univ.* the Second Circuit held "[a] factfinder could reasonably determine that NYU, in light of its representations and longstanding history, impliedly agreed that in-person courses, services, activities, and facilities would comprise a substantial part of the NYU educational experience for which students contracted." *Rynasko v. New York Univ.* 63 F.4th 186, 199 (2d Cir. 2023). Therefore, even under New York Law, the district court erred.

The district court erred because a reasonable jury could conclude that the representations within the University's publications, University's separate online program, and Appellant's payment of the undergraduate tuition package, when taken together as a whole, mutual the intent of the parties was to contract for in-person educational services. As explained in Plaintiffs' brief opposing summary judgment and throughout Appellant's opening brief, the University of Miami extensively marketed and promoted its on-campus and in-person educational services. *See* Dkt No. 139, at 5 – 10; Appellant's Br., 14 – 23. And for the first half of the Spring 2020 semester it provided those exact in-person educational services. APPX Vol XIII, at APPX 3115 – 3116.

For example, students accepted in the University of Miami's in-person program receive uniform correspondences, drafted by the University, stating "we look forward to seeing you on campus" or "we look forward to working with you… on campus." APPX Vol XIII, at APPX 3114. Along with the previously identified uniform correspondences sent to all accepted students, the University also requires its on-campus students to have "Cane Cards," which the University describes as "an on-campus identification card" and provides students enrolled in the in-person program access to on-campus facilities that cannot be accessed without one. APPX Vol XIII, at APPX 3114 – 3115. Furthermore, students enrolled in the University's in-person program full time, like Appellant, were charged for a tuition package of

$25,200 for the Spring 2020 semester. APPX Vol VI, at APPX 1238; APPX Vol XIII, at APPX 3116. Along with having a traditional in-person program, the University also offers an entirely online program called "UOnline." APPX Vol XIII, at APPX 3113. As stated by the University, UOnline has its own marketing materials aimed at students who seek fully online graduate programs. *See* APPX Vol V, at APPX 1172; APPX Vol XIII, at APPX 3125. However, the University admitted "the University does not have any fully online undergraduate degree programs." APPX Vol XIII, at APPX 3125 (emphasis added).

Thus, when looking at the plethora of publications identified by Appellant describing Miami's campus, including: on-campus facilities and welcoming students "on campus," Miami's requirement that on-campus students must have a Cane Card, and without the Cane Card students cannot access certain on-campus facilities, payment of the undergraduate full-time tuition package for the Spring 2020 semester, and the absence of any online undergraduate degree programs available at Miami, a reasonably jury could conclude that the intent of the parties was to contract for in-person and on-campus educational services. *See In Re Pepperdine Univ. Tuition and Fees COVID-19 Refund Litig.*, 2023 WL 2576766, at *5 (C.D. Cal. March 7, 2023) (denying summary judgment noting "[i]n this case, a reasonable jury could conclude that, based on Pepperdine's representations on its website and in its Academic Catalogs, the mutual intent of the parties was to contract for in-person

classes… Drawing all reasonable inferences in the light most favorable to Plaintiffs, a factual dispute exists regarding whether the parties intended to contract for an in-person education.").

Despite the lack of evidence to show there was no dispute of material fact regarding the implied contract claims, the district court granted the University's motion for summary judgment. The district court's erroneous decision to ignore the evidence identifying a genuine dispute of material fact by Appellant and grant summary judgment on Appellant's breach of contract claims cannot stand and should be reversed.

### B.    The District Court Erred By Granting Summary Judgment As To Appellant's Unjust Enrichment Claims.

As noted in Appellant's opening brief, there was no dispute between the parties as to the first two elements of unjust enrichment. Thus, the district court's determination was limited to a finding that Miami's retention of the full tuition payment, despite not providing in-person educational services for the entire contracted for length, was equitable. In Miami argues the FRS precludes Appellant's unjust enrichment claims and Appellant's Unjust Enrichment claims are educational malpractice.

i.   *Whether the FRS precludes Appellant's unjust enrichment claim is a disputed material fact.*

Miami argues that the "the FRS is an express contract covering the same subject matter as the unjust enrichment claim." Appellee Br., at 14. However, whether the FRS precludes Appellant's unjust enrichment claims is a disputed material fact. As described by Miami, the FRS requires students to fully pay all tuition and fees charged to the student's account and nothing else. *See* Appellee Br., at 5 ("I understand that by enrolling for classes at the University of Miami I am responsible to pay any and all tuition, fees and/or any other miscellaneous charges assessed to my student account."). The FRS does not discuss the key terms of the Appellant's unjust enrichment claims, *i.e.* the duty of the University to provide the in-person mode of instruction Appellant reasonable expected to receive for the Spring 2020 semester.

The district court, previously on motion to dismiss, had directly addressed whether the FRS was an express contract. The district court previously held "Plaintiffs respond that the Financial Responsibility Statement is not a contract in that it does not address numerous material terms concerning the students' enrollment, including the cost and amount of tuition and fees owed. The Court agrees." APPX Vol 1, at APPX 98. The district court elaborated by stating "[t]he Financial Responsibility Statement may be relevant to the formation of the alleged contract between Plaintiffs and UM, but it is not the entirety of the parties' agreement." *Id.* Further confirmation of the district court's error rests within the

6

numerous cases in this area of law which have rejected efforts to apply similar financial responsibility statements to bar students' claims. *See, e.g., Jones v. Administrators of Tulane Educ. Fund,* 51 F.4th 101 (5th Cir. 2022); *In re Pepperdine* 2023 WL 2576766, at \*5; *Omori v. Brandeis Univ*., 2022 WL 10511039, at \*1 (D. Mass. Oct. 18, 2022); *Fiore v. Univ. of Tampa*, 568 F. Supp. 3d 350, 371 (S.D.N.Y. 2021); *Figueroa v. Point Park Univ*., 553 F. Supp. 3d 259, 263–64 (W.D. Pa. 2021); *See also Garland v. Western Michigan Univ.*, 2021 WL 305744, at \*3 (Mich. Ct. Cl. Jan. 06, 2021); *Kishinevsky v. Bd. of Trs. of Metro. State Univ. of Denver*, 2020 WL 7087313, at \*2 (Colo. Dist. Ct. Nov. 23, 2020).

The same logic and reasoning still apply here. Appellant's unjust enrichment claims depend on whether Miami's retention of the full tuition payment, despite not providing in-person educational services for the entire contracted for length, was inequitable. Appellant's unjust enrichment claims *do not* depend on whether Appellant paid "any and all tuition, fees and/or any other miscellaneous charges assessed to my student account," which is the extent of the FRS' applicability.

Because the FRS does not include the key terms to which Appellant brought unjust enrichment claims for, the FRS is not an express contract that precludes Appellant's unjust enrichment claims. Therefore, the district court's order granting summary judgment should not be affirmed because the FRS is an express contract precluding Appellant's unjust enrichment claims.

*ii.*   *The Doctrine of Educational Malpractice does not bar Appellant's unjust enrichment claims*

The district court erred in holding that Appellant's unjust enrichment claims invoke the educational malpractice doctrine. As the district court had previously stated on motion to dismiss, "Florida courts grant educational institutions wide deference in determining degree requirements and appropriate levels or methods of instruction." APPX Vol I, at APPX 93. The district court also previously acknowledged "Plaintiffs alleged they were damaged because remote instruction was not contemplated and was of lesser value than the in-person instruction they paid to receive. This is not a claim for educational malpractice; it is a claim for breach of contract." APPX Vol I, at APPX 95. Yet, on summary judgment, the district court inexplicably held "[t]o the extent Plaintiffs argue that their education in Spring 2020 was less valuable than they paid for, Plaintiffs' unjust enrichment claims are barred by the doctrine of educational malpractice." APPX Vol XX, at APPX 4695.

Appellant's unjust enrichment claims, specifically the measure of damages, are not educational malpractice. Appellant's expert provided an objective analysis to determine the value of the education Miami provided versus the value of the education Appellant paid for. Nowhere in Appellant's damages theory is the educational quality considered. In Appellant's opening brief, Appellant's damages

theory represents the loss in economic value between the in-person education paid for and the online education not contemplated and carrying a lesser market value. Appellant's Br., at 39. This simply does not require the court, let alone a potential jury, to evaluate the quality of online education received, only the monetary market value of an online education versus the value charged by the University. *See In Re Pepperdine*, 2023 WL 2576766, at *6 ("Pepperdine's argument that Plaintiffs' damages/restitution theory would require the Court to violate the educational malpractice doctrine are likewise unpersuasive. Moreover, Plaintiffs have proffered portions of an expert report that purports to calculate Plaintiffs' damages by determining the objective value of an in-person education relative to an online-only education, which creates a triable issue as to Pepperdine's contention that calculation of restitution would necessarily require an assessment of the quality of the education provided to these Plaintiffs specifically. This argument does not bar Plaintiffs' quasi-contract claim.").

Because Appellant's damages theory does not require an analysis into the quality of the online education received, the educational malpractice doctrine does not bar Appellant's unjust enrichment claims. Therefore, the district court's order granting summary judgment of Appellant's unjust enrichment claims because of the educational malpractice doctrine should be reversed.

## II.    THE DOCTRINES OF IMPOSSIBILITY AND ACQUIESCENCE DO NOT SUPPORT AFFIRMING THE DISTRICT COURT'S ORDER ON SUMMARY JUDGMENT

### A.  The Doctrines of Impossibility and of Acquiescence were not considered by the District Court and are not subject to review by this Court.

It is well established that "this court generally will not address an issue that has not been decided by the trial court." *Baumann v. Savers Federal Sav. & Loans Ass'n*, 934 F.2d. 1506, 1512 (11th Cir. 1991). Yet, Miami asks this Court to opine on legal issues not addressed or discussed by the district court in granting summary judgment. Miami even readily admitted that the district court failed to address the doctrines of impossibility and acquiescence. *Appellee Br.*, at 38 ("the district court *did not address* the doctrine [of impossibility] in its Summary Judgment Order.") (emphasis added); *Appellee Br.*, at 41 ("While the University raised acquiescence as a ground for entry of summary judgment, the district court *failed to address it* in its Summary Judgment Order.") (emphasis added).

Although it is the general rule that this Court will not address an issue that was not decided by the trial court, "there are situations where it is appropriate for [this court] to entertain an argument not raised below." *Baumann*, 934 F.2d. at 1512. This Court identified five instances in which this Court would review issues not addressed by the trial court:

> First, an appellate court will 'consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice.' Second, the rule may be

relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance 'where the interest of substantial justice is at stake.' Fourth, 'a federal appellate court is justified in resolving an issue not passed on below ... where the proper resolution is beyond any doubt.' Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

*Baumann*, 934 F.2d. at 1512 (citing *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360-61 (11th Cir. 1984); *see also In re Daikin Miami Overseas, Inc.*, 868 F.2d 1201, 1206–07 (11th Cir. 1989) (addressing the five considerations). None of these considerations apply here.

First, whether the doctrines of impossibility and acquiescence are questions of fact, not "pure questions of law." *Baumann*, 934 F.2d. at 1512. The doctrine of impossibility requires the trial court to analyze the "*factual situations*…where the purposes for which the contract was made, have, on one side, become impossible to perform." *McGuire v. Intelident Sols., LLC*, 2021 WL 3195145, at *2 (M.D. Fla. May 12, 2021) (emphasis added). Furthermore, the doctrine of acquiescence requires factual "proof of three elements: (1) the plaintiff actively represented it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200,

1207 (11th Cir. 2008). Therefore, the first and third considerations do not apply here because the doctrines of impossibility and acquiescence are questions of fact.

Second, the doctrines of impossibility and acquiescence were not raised by Appellant. For the second consideration to apply, the appellant must "raise[] an objection to an order which he had no opportunity to raise at the district court level." *Baumann*, 934 F.2d. at 1512. Since Plaintiff-Appellant did not raise the doctrines of impossibility and acquiescence, the second consideration does not apply.

Nor does the fourth consideration does apply here because proper resolution is in doubt. Finally, because the doctrines of impossibility and acquiescence require factual based inquiries, impact to the general public does not exist.

Therefore, because none of the exceptions that would cause the Court to deviate from its practice to address an issue that has not been decided by the trial court apply, this Court should decline to exercise its discretion and not discuss whether the doctrines of impossibility and acquiescence apply here. However, even if this Court considers the doctrines of impossibility and acquiescence, they are not grounds for affirming the district court's order granting summary judgment.

### B. The Doctrine of Impossibility does not bar Appellant's claims

Under Florida law, "the doctrine of impossibility of performance 'refers to those factual situations, too numerous to catalog, where the purposes for which the contract was made, have, on one side, become impossible to perform.'" *Ashraf v.*

*Swire Pacific Holdings, Inc.*, 752 F. Supp. 2d. 1266, 1270 (S.D. Fla. 2009) (citing *Crown Ice Mach. Leasing Co. v. Sam Senter Farms, Inc.,* 174 So.2d 614, 617 (Fla. 2d DCA 1965)). However, "The doctrine of impossibility of performance should be employed with great caution if the relevant business risk was foreseeable at the inception of the agreement and could have been the subject of an express provision of the agreement." *Ashraf,* 752 F. Supp. 2d. 1266, 1270 (S.D. Fla. 2009) (citing *Am. Aviation, Inc. v. Aero–Flight Serv., Inc.,* 712 So.2d 809, 810 (Fla. 4th DCA 1998)).

"When addressing an issue of impossibility of performance, the pertinent question is whether a 'supervening event so radically altered the world in which the parties were expected to fulfill their promises that it is unwise to hold them to the bargain.'" *Goldfein v. Envision Physician Services, LLC*, 2022 WL 3681915, at *9 (S.D. Fla. Feb. 3, 2022) (citing *Cook v. Deltona Corp.*, 753 F. 2d 1552, 1558 (11th Cir. 1985)). "An unexpected impediment to the performance of a contract will not relieve a party from his contractual obligations, unless his performance is rendered impossible by an act of God." *Enid Corp. v. Mills*, 101 So. 2d 906, 908–09 (Fla. 3d DCA 1958) (citing *Moon v. Wilson*, 130 So. 25, 25 (Fla. 1930)).

Miami argues that the University's performance was rendered impossible because the COVID-19 pandemic was not foreseeable. In support, Miami relies on one bankruptcy court case which found the COVID-19 pandemic to be unforeseeable. *See* Appellee Br., at 39 (citing *In re Cinemex USA Real Estate*

13

*Holdings, Inc.,* 627 B.R. 693, 700 (Bankr. S.D. Fla. 2021)). However, this case stands alone. *See Goldfein v. Envision Physician Services, LLC*, 2022 WL 3681915, at *10 (S.D. Fla. Feb. 3, 2022) ("the Court, refusing to weigh the facts at summary judgment, finds that the question whether the COVID-19 pandemic was foreseeable at the time of contracting is a question of fact suited for a jury's determination.").

Whether the COVID-19 pandemic was foreseeable is a disputed material fact. As early as October 2014, the University created a Comprehensive Emergency Management Plan which "developed an analytical risk assessment tool…designed to quantify and document the probability and overall severity of various threats or hazards that could affect the University." APPX Vol XIII, at APPX 3003. In particular, the University identified "Pandemics" as a top threat category "that could affect the University." APPX Vol XIII, at APPX 3003. The University's consideration of pandemics as a top threat to the University means the University foresaw a pandemic as a threat to the University's in-person campus operations. However, the University chose to not act to prevent a pandemic from rendering the University's performance impossible, nor did draft contractual language to guard against such a position. *See Ninivaggi v. Univ. of Delaware*, 555 F. Supp. 3d 44, 52 (D. Del. 2021) (Bibas, J. sitting by designation) ("No provision expressly reserves the school's right to go online or expressly limits students' remedies. Nor is there any force majeure clause. U. Delaware could have added these terms; we will not.

14

Since the COVID-19 outbreak was a pandemic, the University identified "pandemics" as a threat to University operations, and chose to not prevent a pandemic from rendering the University's performance impossible, the COVID-19 pandemic was, thus, foreseeable. Therefore, the University's performance was not rendered impossible).

Miami also claims the University's performance was impossible due to "the issuance of governmental orders prohibiting in-person instruction." Appellee Br., at 40. However, by the time of the governmental orders "prohibiting in-person instruction" were issued, the University had already breached the contract and announced the mandatory transition of online classes. On March 17, 2020, the University was requiring all students to receive online classes and closing campus. APPX Vol I, at APPX 55. On March 19, 2020, the Mayor of Miami-Dade County issued Miami-Dade County EO 7-20, pursuant to which the University was ordered to close its physical location. APPX Vol I, at APPX 139. Thus, when the University announced it was requiring all students to receive online education and campus was closed, no governmental order existed which prohibited in-person instruction. Therefore, no governmental order rendered the University's performance impossible at the time the University failed to perform.

The doctrine of impossibility does not bar Appellant's claims at the summary judgment stage because the COVID-19 pandemic was foreseeable and whether the

governmental order rendered the University's performance impossible are disputed material facts.

## C. The Doctrine of Acquiescence does not bar Appellant's claims

Nor does the doctrine of acquiescence apply. "The defense of acquiescence requires proof of three elements: (1) the plaintiff actively represented it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1207 (11th Cir. 2008). The University failed to meet the requirements necessary to prove acquiescence.

First, the University failed to meet the standard for summary judgment by failing to provide the district court and this Court with any evidence that Appellant actively represented that she would not assert a claim against the University. Rather, the University's whole argument is centered around the fact that Appellant completed her courses for the Spring 2020 semester and received credits for completing those courses. *See* Appellee Br., at 42. However, there was no evidence presented, either before the district court or this Court, that Appellant actively expressed that she was not asserting a claim against the University by simply continuing her courses that she had already registered and paid for because no such evidence exists. Nor did Appellant delay in asserting her claims against the

University. Appellant originally filed her class action complaint in the District of South Carolina on April 9, 2020, which was before the conclusion of the Spring 2020 semester. APPX Vol I, at APPX 24 – 33. Because Miami failed to provide *any* evidence to meet all required elements necessary to invoke the defense of acquiescence, a genuine issue of material fact remains and the order granting summary judgment cannot be affirmed.

In support of its defense of acquiescence, Miami cites to *Acosta v. Dist. Bd. Of Trs. of Miami-Dade Comm. Coll*., 905 So. 2d 226 (Fla. 3d DCA 2005). However, *Acosta* is easily distinguishable. In *Acosta*, the defendant increased tuition prices before the student plaintiff's registration for courses and payment for those courses. *Acosta v. Dist. Bd. Of Trs. of Miami-Dade Comm. Coll*., 905 So. 2d 226, 227 (Fla. 3d DCA 2005). Because the plaintiff paid the increased tuition prices *before* beginning the courses, the court held that if there was a valid contract, the students may have acquiesced to the increase in tuition, by agreeing to pay the higher tuition and take the courses. *Id*. at 228 ("[T]he students, through their conduct, by commencing the program… may be held to have acquiesced to the higher tuition.") (emphasis added). Here, however, Plaintiff and students had already registered for their Spring 2020 semester courses, paid in full, and began their coursework at the time of UM's breach. So, *Acosta* is not applicable here.

The doctrine of acquiescence does not bar Appellant's claims at the summary judgment stage because there is no evidence that Appellant actively expressed that she was not asserting a claim against the University or that she delayed in asserting her claims. And even if such evidence did exist, the district court would be presented with disputed material facts for the jury to resolve.

## CONCLUSION

The district court, for all the reasons contained within Appellant's opening brief and this brief, erred in granting the University of Miami's motion for summary judgment. Therefore, Appellant respectfully requests this Court to reverse and remand the district court's order for further proceedings.


May 12, 2023                                Respectfully submitted,
                                            /s/ Blake G. Abbott
                                            Blake G. Abbott
                                            Poulin | Willey | Anastopoulo, LLC
                                            32 Ann Street
                                            Charleston, SC 29403
                                            P: (843) 614-8888
                                            F: (843) 494-5536
                                            E: blake@akimlawfirm.com

                                            **Counsel for Plaintiff-Appellant**

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This document complies with the type-volume and word-count limits of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), and 11th Cir. R. 32(g)(1) this document contains 4,103 words.

2.     This document complies with the typeface and type-style requirements of Fed. R. App. P. 27(d) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Blake G. Abbott
Blake G. Abbott

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 12, 2023, I electronically filed this brief with the Clerk of Court by using the Court's CM/ECF system, which will send a notice of electronic filing to all parties in the case who are registered through CM/ECF.

/s/ Blake G. Abbott
Blake G. Abbott
